IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**GARY AMATO,**        )
       Plaintiff,  )
       )
v.                     )   2:04cv1115
       )   Electronic Filing
**ROCKINGHAM CASUALTY COMPANY,** )
       Defendant.  )

## OPINION

CERCONE, D.J.

    Plaintiff commenced this action in the Court of Common Pleas of Allegheny County seeking redress for the denial of insurance coverage under an auto policy issued by defendant. Plaintiff further asserts that defendant engaged in bad faith insurance practices in violation of 42 Pa. C. S. § 8371. Defendant removed the action on the basis of diversity jurisdiction. Presently before the court are plaintiff and defendant's cross motions for summary judgment. For the reasons set forth below, plaintiff's motion will be denied and defendant's motion will be granted in part and denied in part.

    Plaintiff submitted a claim to his insurer, defendant, seeking first party benefits under his automobile insurance policy. Plaintiff's injuries occurred when he stopped his vehicle because of a motorist stranded in the middle of the road, and then fell while trying to avoid being hit by an oncoming, out-of-control vehicle. Defendant denied the claim, determining that plaintiff's injuries did not arise out of "the maintenance or use of a motor vehicle." Plaintiff subsequently filed this complaint seeking redress, and after discovery both parties filed motions for summary judgment.

    Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no

genuine issue of material fact and the movant is entitled to judgment as a matter of law." Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's claim, and upon which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. When the movant does not bear the burden of proof on the claim, the movant's initial burden may be met by demonstrating the lack of record evidence to support the opponent's claim. *National State Bank v. National Reserve Bank,* 979 F.2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial,*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matshushita Electric Industrial Corp. v. Zenith Radio Corp.,* 475 U.S. 574 (1986) (*quoting* Fed.R.Civ.P. 56(a), (e)) (emphasis in *Matsushita*). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).

  At all times relevant hereto, plaintiff was the named insured under a personal automobile insurance policy issued by defendant and designated policy number FA10012617. This policy included a Pennsylvania First Party Benefits Coverage Endorsement, as well as Additional First Party Benefits including Medical and Work Loss.

  On December 5, 2003, plaintiff was operating his vehicle on Old Route 22 in Murrysville, Pennsylvania, when he came upon a vehicle stranded due to poor weather and road conditions. Plaintiff reportedly stopped and left his vehicle to assist the operator of the stranded vehicle. The parties dispute whether an out-of-control vehicle came "directly at" plaintiff, but both agree that its presence forced plaintiff to move out of the way. Plaintiff injured his back doing so, and amassed medical bills in the amount of $35,173.57. Because plaintiff was unable to afford the recommended surgery, he has incurred additional medical expenses for pain management. Additionally, plaintiff suffered wage loss in the amount of $10,960.00 in 2004, and the wage loss presently continues.

Plaintiff spoke with a claim representative on December 10, 2003, and later executed an application for first party benefits. Evetta Gibbs ("Gibbs"), a claims handler for defendant, was reassigned plaintiff's claim and requested a further description from him. Plaintiff spoke with Gibbs regarding the incident, and informed her that he injured himself while getting away from the out-of-control vehicle. According to Gibbs' notes, she informed plaintiff that it did not appear the Personal Injury Protection portion of the policy would cover him. On January 9, 2004, plaintiff gave a recorded statement to Doris Pye, defendant's representative. Defendant denies that plaintiff made a specific statement that he was injured while trying to avoid "being hit" by an oncoming vehicle, as the recorded statement references only plaintiff attempting to run from an out-of-control vehicle proceeding down the hill.

Gibbs next spoke with plaintiff on January 23, 2004, and explained that because his injuries arose while he was outside his vehicle, coverage would be denied. Plaintiff subsequently requested to speak with a supervisor, and was contacted by Greg Van Buskirk ("Van Buskirk"), an auto claims supervisor for defendant. Van Buskirk later admitted his failure to review case law prior to denying plaintiff's claim; however, Ken Halverson ("Halverson"), a claims manager for defendant, reported doing so.

On February 17, 2004, Van Buskirk and Gibbs reviewed plaintiff's claim and a second reservation of rights was sent to plaintiff. Gibbs later entered a claim note stating that plaintiff's file would be sent to Michael Boone of Post & Schell for further review, yet Gibbs failed to do so. Van Buskirk subsequently reviewed plaintiff's claim with Halverson, and reported that the denial was appropriate because plaintiff was not in the process of operating the insured vehicle at the time of the incident.

Van Buskirk informed plaintiff on March 1, 2004, that coverage had been denied. Plaintiff thereafter received a denial letter incorrectly quoting Part B-Medical Payments Coverage and further stating that coverage would not be provided because plaintiff's injuries were not caused while occupying the vehicle or being struck by a vehicle. An amended denial letter was sent on May 4, 2004, this time referencing the applicable First Party Benefits Endorsement of plaintiff's policy. Defendant again reiterated its rationale for denying plaintiff's

claim, which mirrored the explanation in the initial letter.

Plaintiff commenced this lawsuit on or about June 22, 2004, alleging breach of contract and bad faith. He seeks to recover the above-stated medical expenses and wage loss incurred as a result of this accident, as well as interest, punitive damages and cost and attorney's fees for the bad faith denial of his insurance claim. Each party has filed for summary judgment on plaintiff's breach of contract and bad faith claims.

## I.     Breach of Contract

Plaintiff moves for summary judgment on his breach of contract claim. According to plaintiff, he sustained bodily injury arising out of "the maintenance or use of a motor vehicle," thereby qualifying him for first party benefits. Defendant was thus obligated to provide plaintiff with benefits, and its failure to do so constitutes a breach of the insurance contract. Furthermore, plaintiff contends that defendant's denial of his claim was based upon an unreasonable interpretation of the insurance policy, contrary to both the policy language and settled case law.

Defendant contends that it had a reasonable basis to deny plaintiff's claim, as there was no causal link between the injury sustained and the insured vehicle. Because plaintiff's injury did not arise out of the maintenance or use of a motor vehicle, he was not entitled to first party benefits. Defendant thus avers that it is entitled to summary judgment on plaintiff's breach of contract claim.

The automobile insurance policy issued to plaintiff included a Pennsylvania First Party Benefits Coverage Endorsement providing: "We will pay, in accordance with the Act, the Basic First Party Benefit to or for an 'insured' who sustains 'bodily injury.' The 'bodily injury' must be caused by an accident arising out of the maintenance or use of a 'motor vehicle'." As is indicated in both parties' briefs, the meaning of the phrase "arising out of the maintenance or use" is essential to the outcome of this case. It is recognized as a threshold eligibility requirement, because benefits are only awarded if the injury arises out of the maintenance of use of a motor vehicle.

The term is not defined in the Pennsylvania Vehicle Financial Responsibility Law, 75 Pa. C. S. § 1702, nor the Pennsylvania Motor Vehicle Code. Case law indicates, however, that in

order for a party to receive benefits, there must be a causal connection or nexus between the injury and the vehicle. *See Alvarino v. Allstate Insurance Co.,* 537 A.2d 18, 20 (Pa. Super. 1988). Although proximate cause is not required, some connection is necessary, and the inquiry properly focuses upon the instrumentality causing the injury. *Lucas-Raso v. American Mfrs. Ins. Co.,* 657 A.2d 1, 3 (Pa. Super.1995). As is evidenced by a review of case law, a determination as to whether a causal connection existed depends greatly upon the factual circumstances of the case.

### A.   Occupancy

First, plaintiff and defendant dispute the necessity of subjecting plaintiff's claim to the occupancy test delineated in *Utica Mutual Insurance Company v. Contrisciane.* 473 A.2d 1005, 1008 (Pa.1984). Defendant's policy, in accordance with the Pennsylvania Motor Vehicle Responsibility Law, sets forth the order of priorities in which first party benefits are paid. As the policy correctly indicates, an insurer will not pay if there is another at a higher level of priority. *See* 42 Pa. C. S. § 8371. The First category listed, and the highest level of priority, is "the insurer providing benefits to the 'insured' as a named insured." *Id.*

In the instant case, plaintiff qualifies as such, thus it is unnecessary to perform the "occupancy" test espoused by defendant and used to determine whether an insured at a lower priority level is responsible for payment. *Utica,* 473 A.2d at 1008. A finding of occupancy is not essential to activate defendant's fiscal responsibilities here, and defendant's reliance on *Utica* is misplaced as such.[1] However, regardless of priority, defendant is not obliged to provide first party benefits unless the insured sustains bodily injury arising from the maintenance or use of a motor vehicle.

### B.   Maintenance or Use of a Motor Vehicle

As is evident from the above, the issue of maintenance or use must still be addressed

---

[1] Although a finding of occupancy is unnecessary here, maintenance or use of a motor vehicle is presumed when such a determination is made. *Lucas-Raso v. American Mfrs. Ins. Co.,* 657 A.2d 1, 4 (Pa. Super.1995). Thus if plaintiff were to satisfy the *Utica* test, the maintenance or use provision of defendant's policy would be satisfied.

because defendant is only contractually bound to provide coverage in such instances. Both plaintiff and defendant cite a variety of case law involving claims which may be analogous to that which is at hand. Yet until further information is obtained as to the chain of events surrounding plaintiff's accident, it would be improvident to make a definitive determination regarding this issue.

In his recorded statement, plaintiff averred that while operating his insured vehicle he was forced to stop and exit his car due to a motorist stranded in the road as it was December and the roads were snow-covered. If the plaintiff could not proceed around the stranded vehicle, and was subsequently forced to exit his vehicle and leave it in the road in order to assist in moving the stranded vehicle from his path of travel, a finder of fact could reasonably determine that plaintiff was engaged in "the maintenance or use" of his motor vehicle when he was injured. Pennsylvania has recognized a causal connection between the insured vehicle and the injuries sustained where the plaintiff is struck by an approaching motorist while attempting to enter or re-enter the plaintiff's vehicle. *Fisher v. Harleysville Ins. Co.*, 621 A.2d 158, 160 (Pa. Super. 1993). Thus if plaintiff merely exited his vehicle so that he would ultimately be able to proceed *en route*, a finder of fact may find the maintenance or use requirement is satisfied.

If, however, the evidence at trial reveals plaintiff moved his vehicle off to the side of the road and left it for a significant amount of time to simply aid the stranded motorist, it is equally plausible that the finder of fact could fail to find a causal connection. Plaintiff would thus not have been engaged in a transaction essential to the use of his vehicle, thereby rendering it merely incidental to his injuries. *See L.S., a minor, v. Eschbach*, 822 A.2d 796, 805-6 (Pa. Super. 2003), (benefits denied where the plaintiff was no longer engaged in a transaction essential to using the motor vehicle when injured); *reversed on other grounds,* 874 A.2d 1250 (Pa. 2005). As such, plaintiff may not be found to have been injured while engaged in the "maintenance or use of a motor vehicle."

In sum, the record reveals multiple issues of historical and material fact pertaining to plaintiff's accident which must be presented to a jury. Therefore, both parties' motions for summary judgment on plaintiff's breach of contract claim must be denied.

## II. Bad Faith

Plaintiff moves for summary judgment on its bad faith insurance practice claim. Plaintiff contends defendant is liable for bad faith insurance practices because its agents, who had experience with these types of claims, disregarded policy language and the plaintiff's status as a named insured. Furthermore, plaintiff asserts that defendant's failure to thoroughly review the applicable case law and obtain a formal legal opinion evidences a mind set of denial from the start of the claim. Thus plaintiff argues that defendant could not have acted in good faith as a matter of law.

Defendant asserts the record reflects an adequate investigation on its part, and that there was a reasonable basis for denying plaintiff's claim. Its agents obtained numerous statements from plaintiff to verify the facts of the loss, and multiple parties evaluated the claim as well. Furthermore, defendant's agents obtained an informal legal opinion and reviewed pertinent case law summaries. Defendant thus contends that plaintiff cannot establish by clear and convincing evidence that it acted in bad faith.

At common law there was no redress for an insurer's bad faith denial of claims under an insurance policy. *See D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.*, 431 A.2d 966 (Pa. 1981). In 1990, the Pennsylvania legislature created a statutory remedy for such conduct by enacting the "bad faith statute," codified at 42 Pa. C. S. § 8371.[2]

To recover for a claim of bad faith under § 8371, the policy holder must show that the insurer: (1) did not have a reasonable basis for denying benefits under the policy, and (2) knew or

---

[2] The "bad faith statute" provides:
In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
    (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%;
    (2) Award punitive damages against the insurer; and
    (3) Assess court costs and attorney's fees against the insurer.
42 Pa. C.S.A. § 8371.

7

recklessly disregarded its lack of a reasonable basis in denying the claim. *Terletsky v. Prudential Property and Casualty Insurance Co.*, 649 A.2d 680, 689-90. Although the term "bad faith" on the part of an insurer is construed as encompassing "any frivolous or unfounded refusal to pay proceeds of a policy" and ordinarily imports "a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill-will[,]" the statue does not require a plaintiff to prove that the insurer consciously acted pursuant to such a motive or interest; it is enough if the insurer recklessly disregarded the lack of a reasonable basis in denying benefits. *Klinger v. State Farm Mutual Automobile Insurance Co.*, 115 F.3d 230, 233 (3d Cir. 1997). (*quoting Terletsky*, 649 A.2d 680, 688).

Pennsylvania law defines reckless conduct as the "intentional acting or failing to act in complete disregard of a risk of harm to others which is known or should be known to be highly probable and with a conscious indifference to the consequences." *Pennsylvania's Suggested Standard Jury Instructions*, at 3.17. It has long been recognized that mere negligence in ascertaining whether a claim is covered is insufficient to support a recovery for bad faith practices. *See Polselli v. Nationwide Mutual Fire Insurance Co.*, 23 F.3d 747, 751 (3d Cir. 1994); *Jung v. Nationwide Mutual Insurance Co.*, 949 F.Supp. 353, 356 (E.D. Pa. 1997). It is likewise clear that an incorrect analysis of the applicable law is insufficient to sustain bad faith liability. *See Jung*, 949 F.Supp. at 356; *Terletsky*, 659 A.2d at 690 (opining that where Pennsylvania law was in flux with regard to its application to the matter at hand, insurer had reasonable basis for disputing claim of coverage which precluded claim of bad faith, even though insurer was mistaken as to availability of coverage under law as clarified by appellate court); *Polselli*, 23 F.3d at 752 (noting that complex factual situation which created uncertainty as to application of law to facts may mitigate against finding of bad faith, as may animosity generated by the parties' treatment of each other in attempting to identify their respective rights and resolve the matter).

Each element of a bad faith claim must be established by evidence which is "clear, direct, weighty and convincing, so as to enable the [factfinder] to make its decision with a 'clear conviction.'" *Polselli*, 23 F.3d at 752. Thus, an insurer's bad faith conduct may not be merely

insinuated. *Terletsky,* 649 A.2d at 688.

Here, the record falls short of establishing the essential requirements of a bad faith insurance practice claim by clear, direct, weighty, and convincing evidence. *Polselli,* 23 F.3d at 752. The matter presented to defendant and this court was/is a less than straightforward situation and there remains uncertainty as to the application of the law to the facts. As the Third Circuit has noted, this mitigates against a finding of bad faith. *Polselli v. Nationwide Mutual Fire Insurance Co.,* 23 F.3d 747, 752 (3d Cir. 1994). Additionally, the record does not demonstrate that defendant acted "in complete disregard of a risk of harm to [plaintiff] which [was] known or should [have been] known to be highly probable and with a conscious indifference to the consequences." *Pennsylvania's Suggested Standard Jury Instructions,* at 3.17. While plaintiff posits that defendant's agents searched for any possible means to reduce defendant's liability, there is virtually no evidence to support this proposition, and in the end the record will support at best a finding that defendant's agents were negligent in ascertaining whether plaintiff's accident occurred during "the maintenance or use" of a motor vehicle. Accordingly, plaintiff's motion for summary judgment on his bad faith insurance practices claim must be denied and defendant's motion on that claim must be granted.

Dated: 4-11-06

                                                                    David Stewart Cercone
                                                                    United States District Judge

cc:    Jeffrey L. Suher, Esquire
        Jeffrey L. Suher, P.C.
        4328 Old William Penn Highway
        Suite 2J
        Monroeville, PA 15146

        Rhonda J. Sudina, Esquire
        Robb Leonard Mulvihill
        2300 One Mellon Center
        Pittsburgh, PA 15219